**In the Matter of Helen Maryetta CRAVEN, Debtor.**

**In the Matter of John Edwards CRAVEN, and Paula Jean Craven, Debtors.**

**Helen Maryetta CRAVEN, John Edwards Craven, and Paula Jean Craven, Movants,**

**v.**

**HERITAGE BANK, Respondent.**

**Bankruptcy Nos. 87–00129–SJ–12, 87–00128–SJ–12.**

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Jan. 30, 1987.

Janice E. Stanton, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for debtors/movants.

ORDER MEMORIALIZING ORAL OR-
DERS ISSUED BY COURT ON JAN-
UARY 26, 1987, ON CASH COLLAT-
ERAL ISSUE

DENNIS J. STEWART, Chief Judge.

The within petitions for relief under chapter 12 of the Bankruptcy Code were filed on January 13, 1987. The debtors' counsel, at the same time, filed a motion for use of the cash collateral of the Heritage Bank. The motion which was thus filed was of the following substance:

"Debtors have received proceeds in the amount of One Thousand Three Hundred Twenty-four Dollars and Fifty-Three cents ($1,324.53) from the sale of tobacco. The Bank is well secured. Debtors are in desperate need of these proceeds to fund their living expenses."

The motion to use cash collateral was accompanied by a "motion to shorten time" which was equally short and unparticularized, failing even to disclose any deadline which was necessary to be observed in taking the action which was requested.

The court accordingly issued its order on January 16, 1987, specially setting a hearing on the motion for use of cash collateral for January 26, 1987, in St. Joseph, Missouri. Thus, it was necessary for the court to make a special trip to St. Joseph for the hearing. When the court arrived, however, it was apparent that the parties had conducted no prior negotiations, for they immediately requested time to conduct negotiations. In less than a half-hour, the parties reported that they had reached an agreement whereby the respondent bank would permit the debtors to use the $1,324.53 in return for a security interest in the debtors' crops to the extent of $1,324.53. But the form of adequate protection thus offered—the granting of a security interest in previously unencumbered property—necessitated the according of prior notice and an opportunity to be heard to all the other creditors.

Therefore, at the conclusion of this specially-set hearing, it was necessary for the court to instruct the debtors' counsel to take the extrajudicial action which seemingly should have been taken in the first place—to advise all creditors in writing of their intention to accord Heritage Bank a security interest on their next crops to the extent of $1,324.53 and grant those creditors at least 15 days in which to object. Such a procedure is expressly warranted by the legislative history under § 102 of the Bankruptcy Code to the following effect:

"Paragraph (1) defines the concept of 'after notice and a hearing.' The concept

is central to the bill and to the separation of the administrative and judicial functions of bankruptcy judges. The phrase means after such notice as is appropriate in the particular circumstances (to be prescribed by either the Rules of Bankruptcy Procedure or by the court in individual circumstances that the Rules do not cover. In many cases, the Rules will provide for combined notice of several proceedings), and such opportunity for a hearing as is appropriate in the particular circumstances. Thus, a hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This is a significant change from present law, which requires the affirmative approval of the bankruptcy judge for almost every action. The change will permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection."

As a result of the experience in these cases, the court will no longer permit its time to be unnecessarily commandeered by conclusionary motions for use of cash collateral and equally general protests that time is of the essence in holding a hearing on the issue. Henceforth, in order to command an immediate hearing on the issue of use of cash collateral, movants must demonstrate by affidavit, containing particularized factual averments, in accordance with the procedure generally outlined in Rule 65, F.R.Civ.P.[1] that irreparable injury will result without an immediate hearing and also to demonstrate that they have attempted to negotiate in good faith with the relevant secured creditor without success or that they have given the secured creditor at least 15 days' advance notice of their intention to use cash collateral and the

secured creditor has lodged a specific objection thereto which cannot be compromised. If the interests of all creditors are encumbered, as in the case at bar, it must additionally be demonstrated that those creditors have been given 15 days' notice of intention to accord a security interest (or other action which involves their interests) and that one or more of them has objected thereto.

It is accordingly, in accordance with the foregoing,

ORDERED that counsel for the debtors transmit notice to all creditors of the intention to grant a security interest to the extent of $1,324.53 in the debtors' next crops to Heritage Bank.

---

**1.** See 65(b)(1) and 65(b)(2) F.R.Civ.P. to the following effect: "A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required."